**UNITED STATES of America, Appellee,**

v.

**Kenneth E. MATLOCK, Appellant.**

**No. 85–1511.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1985.

Decided March 12, 1986.

Richard E. McFadin, Kansas City, Mo., for appellant.

Robert E. Larsen, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

McMILLIAN, Circuit Judge.

Kenneth E. Matlock appeals from a final judgment entered in the District Court [1] for the Western District of Missouri upon a jury verdict finding him guilty of conspiracy to distribute cocaine and distribution of cocaine in violation of 21 U.S.C. §§ 846, 841 (1982). Appellant was sentenced to six years imprisonment on each count, the sentences to run concurrently. Appellant was also placed on special parole for five years, fined $5,000, and assessed $50.00 for each offense. For reversal appellant argues that (1) there was insufficient evidence as a matter of law and (2) the district court erred in failing to order material changes in the presentence investigation report. For the reasons discussed below, we affirm.

On November 26, 1984, a federal grand jury returned an eleven count indictment against Earl L. King, Jimmy Dean King

---

1. The Honorable Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri.

and appellant. Each of the defendants was charged in one or more counts. Appellant was charged in five separate counts: (1) conspiracy to distribute a controlled substance, (2) distribution of a controlled substance, (3) causing or threatening to cause bodily harm to an informant, (4) unlawfully carrying a firearm while threatening harm to an informant, and (5) unlawfully carrying a firearm during the commission of a crime of violence, the distribution of cocaine. This last charge was dismissed for failure to state an offense.

The government's chief witness was Matthew Bower. Bower testified that he had been referred to the Drug Enforcement Administration (DEA) after he reported to an Excelsior Springs policeman that he had observed drug deals at the Chouteau Inn where he worked as a bouncer. Agent David Cigich of the DEA testified that he had met Bower prior to September 1984 and that Bower worked for him as a paid informant from September to November 1984.

Bower testified that on several occasions, pursuant to instructions from Agent Cigich, he purchased cocaine from Earl King with money furnished by Cigich. Earl King also worked as a bouncer at the Chouteau Inn. These purchases occurred between September 21, 1984, and November 13, 1984. Appellant was not present during the first two purchases which occurred on September 21, 1984, and on October 18, 1984.[2]

A third purchase occurred on November 1, 1984, when Bower purchased 74.99 grams of cocaine for $7,700. It is undisputed that appellant was present during the transaction. Appellant drove his car to Earl King's home and then the two of them went to appellant's residence. Here, Bower got into the back seat while appellant, whom Bower had never met, remained in the driver's seat. King sat in the front passenger seat. King gave Bower a duffle bag and told him the smaller of the two cocaine packages in the duffle bag was for Bower. Bower took the smaller package and gave King $7,700. During the transaction appellant looked straight ahead and said nothing. Bower testified that appellant kept his hand on a gun; appellant and Earl King deny this. On the following day King came to Bower's home and delivered a small package of cocaine to compensate for a shortage in the November 1, 1984, delivery. This package contained 1.4 grams of cocaine with a purity of 16 percent.

On November 6, 1984, Bower, at Earl King's request, met King in a motel room at the Red Roof Inn. Bower testified that appellant was seated on one of the beds in the room with a M–1 carbine rifle next to him. A second gun was next to King. At King's request Bower delivered a package of cocaine to "Rick" at the Chouteau Inn. Rick paid Bower $800 and promised to pay the $1200 balance on the following day.

On November 8, 1984, Bower, again at Earl King's request, went to the Drury Inn Motel. King again asked Bower to deliver some cocaine to a customer at the Chouteau Inn. The customer was to pay King $3800 for the cocaine at a later date.

On November 9, 1984, Agent Cigich obtained a search warrant to search the motel room occupied by Earl King. Earl King and his brother Jimmy King were leaving just as the officers arrived. The officers seized packages containing cocaine, a sifter, scales, and a semi-automatic weapon. The agents also recovered $2,063 in cash from King, $400 of which were prerecorded bills used by Bower to purchase the cocaine on November 1, 1984. The agents did not arrest Earl King or Jimmy King.

At about 7:20 p.m. on the same evening, Bower and Agent Cigich met and discussed

---

**2.** On September 21, 1984, Bower purchased 16.-38 grams of cocaine with a purity of 68 percent for $2,000. The telephone call setting up the meeting place was recorded and Bower wore a concealed recorder during the drug transaction which occurred in an automobile.

On October 18, 1984, Bower purchased 18.58 grams of cocaine with a purity of 72 percent for $2,100. This purchase occurred inside Bower's home.

Bower's concern for his safety. Agent Cigich gave Bower a Browning pistol which was Cigich's personal weapon.

On November 10, 1984, Jimmy King asked Bower to meet him at the Alamo Restaurant. Upon arriving at the restaurant, Bower heard two shots fired in his direction. Bower returned to his car and drove to a pay phone and called Agent Cigich. When he hung up the phone, Bower was confronted by Jimmy King who held a gun to his head. King took Bower to a car behind the building where appellant was also waiting. King and appellant forced Bower into the car, searched him for a concealed recorder and accused him of being an informant. King and appellant took the Browning pistol from Bower. Appellant pointed a gun at Bower during this confrontation. Bower was able to convince them that he was not an informant. King and appellant then asked Bower for the $3800 which was owed to Earl King for the cocaine which had been delivered to customers by Bower. Bower indicated that he would get the money and deliver it to them. Appellant and King then released Bower and invited him to the Alamo Restaurant where they bought him a drink.

On November 13, 1984, Agent Cigich devised a plan to deliver the $3800 to Earl King and to regain possession of the Browning pistol which had been taken from Bower. Bower told Jimmy King that the $3800 would be left in the glove compartment of Bower's car at a shopping center parking lot. Bower also asked King to return the Browning pistol.

Federal agents drove Bower's car to the shopping center, parked it on the parking lot, and left $3800 in the glove compartment of the car. At about 4:00 p.m. Jimmy King and appellant arrived at the shopping center in separate cars. They met briefly in a Western Auto store and then Jimmy King left and got into his own car. Appellant then walked directly to Bower's car. As appellant entered Bower's car, federal agents arrested him. The $3800 was found on the front seat and the Browning pistol was found in the glove compartment.

A jury found appellant guilty of conspiring to distribute cocaine and distribution of cocaine. Appellant was acquitted of the charge of threatening to cause bodily injury to an informant and carrying a firearm during the commission of a crime of violence. Appellant was sentenced to six years imprisonment on each count, the sentences to run concurrently. Appellant was also placed on special probation for five years, fined $5,000 and assessed $50 for each offense. This appeal followed.

Appellant initially argues that the district court erred in entering judgment against him because there was insufficient evidence as a matter of law to sustain the convictions. Appellant argues that the government failed to prove the existence of a conspiracy between appellant, Jimmy King and Earl King to distribute cocaine and failed to prove appellant's participation in any conspiracy that might have existed. Appellant's defense theory was that he was merely present and was not involved in the criminal activity. This theory was corroborated by the testimony of Earl and Jimmy King. Appellant argues that the only evidence of his criminal association with the King brothers is the testimony of Bower, who is a convicted felon, an admitted liar and a paid informant.

■ To convict a defendant of conspiracy, the government must prove beyond a reasonable doubt that there was an agreement among the defendants to achieve some illegal purposes, the defendant knew of the agreement, and with that knowledge the defendant became part of the conspiracy. *E.g., United States v. Lewis,* 759 F.2d 1316, 1352 (8th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). The agreement need not be express or formal and may be established by circumstantial evidence alone. *E.g., United States v. Hoelscher,* 764 F.2d 491, 494 (8th Cir.1985).

■ Considering the evidence in the light most favorable to the verdict and giving the government the benefit of all reasonable inferences that may be logically drawn from the evidence, *id.,* we conclude that

there was sufficient evidence to support the jury verdict. Although appellant, through the testimony of his codefendants, offered evidence that he was not involved in the conspiracy to distribute cocaine, the jury chose to believe the government's witnesses rather than appellant's co-defendants. The government's evidence established that appellant knew about Earl King's cocaine distribution scheme, was present during several cocaine transactions and provided security and pick-up service in connection with several of the cocaine transactions. Bower's testimony was corroborated in part by tape recordings of telephone conversations setting up drug transactions and the testimony of federal agents who had observed some of the transactions. This same evidence was sufficient to support the jury's verdict on the distribution charge.

Appellant next challenges the accuracy of the presentence investigation report. On the day of the sentencing hearing, appellant filed a memorandum and suggestions in support of sentencing. Contained in the memorandum were objections to the amount of cocaine attributed to him and the references to the firearms. In response to the district court's question whether there were any deletions or corrections to the presentence report, appellant's counsel stated that the report referred to "high purity" cocaine and that the evidence indicated that the purity of the cocaine was variable. The district court deleted the reference to "high purity." Counsel then stated "that's about it, Your Honor, we read the rest of it and that's about the extent of any difference or any objections we may add to it. Essentially it is correct."

Appellant argues that the district court improperly failed to delete or correct the references to the amount of cocaine and the firearms. Appellant argues that only the amount of cocaine involved in the distribution count should be attributed to him, not the total amount involved in the conspiracy. Appellant also argues that the reference to the use, possession or association with firearms should be deleted be-

cause he was acquitted of the firearm charges.

The government argues that appellant has waived any objections to these inaccuracies by failing to call them to the attention of the district court. Moreover, the government argues that appellant's concern about the parole commission's use of this information should be raised administratively or through a petition for a writ of habeas corpus.

A defendant who contests the accuracy of information contained in a presentence investigation report must be given an opportunity to explain or rebut that information before sentencing. The procedure for rebuttal is within the sound discretion of the trial court. *United States v. Papajohn*, 701 F.2d 760, 763 (8th Cir.1983).

In the present case, appellant was given an opportunity to challenge the accuracy of the presentence investigation report prior to sentencing. Those matters brought to the district court's attention were corrected by the court. The other matters which appellant complains about on appeal were not brought to the attention of the district court during the sentencing hearing nor did appellant indicate to the district court that other matters not orally addressed during the hearing were contained within his memorandum. Appellant therefore did not preserve this issue for review and plain error does not exist.

Accordingly, the judgment of the district court is affirmed.