11-38-cr
United States v. Simpson

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to summary orders filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 30th day of January, two thousand twelve.

PRESENT:

JOSÉ A. CABRANES,
CHESTER J. STRAUB,
DEBRA ANN LIVINGSTON,
   *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
 *Appellee,*

  -v.-                  No. 11-38-cr

JARVIS SIMPSON,
 *Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | Lisa A. Peebles, Federal Public Defender (Melissa A. Tuohey, Assistant Federal Public Defender, *of counsel*; James P. Egan, Research & Writing Specialist, *on the brief*), Syracuse, NY. |
| **FOR APPELLEE:** | Thomas E. Booth, Appellate Section, Criminal Division, Department of Justice (Lanny A. Breuer, Assistant Attorney General, Greg D. Andres, Acting Deputy Assistant Attorney General; Richard S. Hartunian, United States Attorney for the Northern District of New York, Brenda K. Sannes & Ransom P. Reynolds, Assistant United States |

Attorneys for the Northern District of New York, *on the brief*), Washington, DC.

Appeal from a judgment of conviction of the United States District Court for the Northern District of New York (Glenn T. Suddaby, *Judge*) entered December 21, 2010.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court is **AFFIRMED**.

Defendant-appellant Jarvis Simpson appeals a judgment of conviction entered on December 21, 2010, following a jury trial, imposing a 327-month term of imprisonment for conspiring to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 846.

We assume the parties' familiarity with the factual history and proceedings below. Briefly, Simpson ran a cocaine selling business in Utica, New York. Simpson would purchase powder cocaine in New York City, transport the cocaine back to Utica, and, with the assistance of Julia Valladares and Nealonnie Brown, would cook the powder cocaine into crack cocaine for resale. On March 18, 2009, Simpson was arrested and jailed at the Oneida County Correctional Facility.

While Simpson was incarcerated, Valladares and Brown talked to Simpson by phone and visited him. During a routine review of Simpson's telephone calls and visitor logs, Officer Russell Smith determined that Simpson, in code, was directing the women to continue the drug enterprise and instructing them on how to proceed in his absence. Smith reported his suspicion to his supervisor, David Cady, who investigated the situation and confirmed the involvement of Valladares and Brown in a conspiracy to possess with intent to distribute cocaine.

On May 30, 2009, law enforcement authorities stopped Valladares while she was driving back to Utica after purchasing 119 grams of crack cocaine from one of Simpson's suppliers in New York City, and placed her under arrest. Brown arrived at the scene to pick up two of Valladares's children, who had accompanied Valladares to New York City, and was also placed under arrest.

Following the arrests of Valladares and Brown, a federal grand jury handed up a one-count indictment charging Simpson, Valladares, and Brown with engaging in a conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. In March 2010, three months prior to Simpson's trial, Valladares and Brown pleaded guilty to the single count indictment and entered into cooperation agreements with the government.

Simpson, through counsel, requested the government to produce all prior statements, criminal records, and evidence of drug abuse by any prospective government witness, including Valladares and Brown. The defense counsel requested subpoenas be issued to the (1) United States Probation Office for all pretrial reports or documents for Valladares and Brown, including those

concerning drug testing, polygraphs, or voice stress exams since July 15, 2009, (2) Jamesville Correctional Facility for all records pertaining to Brown's attendance in the High Impact Incarceration Program ("HIIP") after August 13, 2009, and (3) Oneida County Department of Social Services for any public assistance records for Valladares and Brown.

Following an *in camera* review of the records from the United States Probation Office and Jamesville Correctional Facility, the District Court declined to disclose those records to the defense, stating that the records did not include impeachment material, and that there was "no indication . . . that there was any violation of pretrial conditions with regards to drug use." The District Court disclosed the public assistance records, however, which indicated that Brown had concealed drug income on her public assistance application.

On June 22, 2010, the first day of trial, Simpson moved for disclosure of Brown's records on the ground that the court docket entries showed that Brown was sent to the HIIP for failing a drug test after lying about her drug use to a pretrial services officer. The District Court assured Simpson that it had carefully reviewed 800 pages of documents *in camera*, and explained that Valladares and Brown had admitted drug use, but that there was no indication that either of them had failed a drug test or lied about drug use after starting a drug treatment program.

During a three-day jury trial, beginning June 22, 2010, the government called five witnesses, including Valladares and Brown, and played the recordings of Simpson's phone calls to Valladares and Brown for the jury. Simpson did not testify or present any evidence, but rather proposed that Valladares and Brown were running their own cocaine business, and that they falsely accused him of participating in it to obtain leniency at their trials. The District Court charged the jury on June 24, 2010, and the jury returned a guilty verdict that same day.

The issue on appeal is whether the District Court conducted an adequate *in camera* review of defense-subpoenaed records. Specifically, Simpson argues that, in exercising its discretion to review the subpoenaed records *in camera*, the District Court assumed the responsibility to thoroughly review the requested records for impeachment and exculpatory evidence, and that the defense counsel's independent procurement of evidence that Brown failed a drug test after lying about her drug use to a pretrial services officer indicates that the District Court failed in its responsibility to thoroughly review the requested records. Accordingly, Simpson requests that we vacate Simpson's conviction and remand to permit defense counsel to fully and independently review the subpoenaed records.

## DISCUSSION

We review a district court's discovery ruling for an "abuse of discretion." *See, e.g.*, *United States v. Abu-Jihaad*, 630 F.3d 102, 142 (2d Cir. 2010); *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining that the term of art "abuse of discretion" includes errors of law).

The Due Process Clause requires the government to disclose favorable and material information to the defense, including information that would impeach the testimony of government

witnesses. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). A district court may, in its discretion, conduct an *in camera* review of potential impeachment materials the government submits, and disclose to the defense only those materials for which there is "a compelling need for disclosure to meet the ends of justice." *United States v. Pena*, 227 F.3d 23, 27 (2d Cir. 2000) (internal quotation marks omitted).

The Supreme Court has held that a defendant's interest in ensuring a fair trial, as well as that of the government, "can be protected fully by requiring that the [relevant materials] be submitted only to the trial court for *in camera* review," *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987), and that "[d]efense counsel has no constitutional right to conduct his own search of the [government's] files to argue relevance," *id.* at 59; *see also Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one. . . .").

In this case, the District Court inspected all 800 pages of documents submitted by the government and disclosed to the defense all items deemed material for impeachment of the government's witnesses. Simpson's allegation that the District Court's review was inadequate does not create a right to unfettered access to the materials submitted by the government. *See United States v. Leung*, 40 F.3d 577, 582–84 (2d Cir. 1994) (holding that a defendant does not gain the right to fully and independently review the materials submitted by the government simply by claiming that the district court conducted an inadequate *in camera* review).

Moreover, even if impeachment evidence was withheld from the defense, reversal would not be appropriate in this case. When impeachment evidence is withheld from the defense, reversal is required only if there is a reasonable probability that disclosure of the evidence would have changed the outcome of the proceedings, *Strickler v. Greene*, 527 U.S. 263, 280 (1999), and is not appropriate if the government presented a very strong case against defendant, *id.* at 289–96, or if the defendant impeached the government witnesses with independent evidence, *United States v. Persico*, 645 F.3d 85, 111 (2d Cir. 2011); *United States v. Spinelli*, 551 F.3d 159, 164–66 (2d Cir. 2008).

In this case, the District Court's misstatement that Brown did not violate the terms of her pretrial release was harmless. Simpson obtained the correct information before trial. Defense counsel also aggressively and thoroughly impeached Valladares and Brown with independent evidence at trial. Both women admitted that they had pleaded guilty to the charged conspiracy, that they were facing lengthy prison sentences, and that they entered into cooperation agreements with the government to obtain leniency at sentencing. In addition, both Valladares and Brown admitted to numerous false statements to law enforcement agents related to the case, and Brown admitted that she was a cocaine addict at the time of her crimes, stole some of Simpson's drug proceeds, and did not report her drug income on her public assistance forms, among other illegal and dishonest actions.

The government presented an extremely strong case against Simpson, including the records of Simpson's incriminating telephone calls to Valladares and Brown, which strongly corroborated

4

their eyewitness testimony against him. Indeed, despite the extensive impeachment of Valladares's and Brown's character, the jury returned a guilty verdict in less than one day.

## *CONCLUSION*

We have considered all of Simpson's arguments on appeal and find them to be without merit. For the reasons stated above, the order of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk